WILLIAM A. WHITE *vs.* THE LANSING CHEMICAL COMPANY.

First Judicial District, Hartford, October Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

The delivery of personal property by its owner to one who had agreed to buy it of the first vendee, if intended by the owner as a performance of his original contract, will be so treated, and will prevent him from thereafter suing the sub-vendee for a wrongful conversion of the property.

Payment of the purchase price as a condition precedent to the consummation of a sale by a delivery of the property, is one that can be waived.

A finding will not be changed to accord with a paragraph of the draft-finding marked "proven," if it is quite clear upon examination that such marking was inadvertent or through a misunderstanding of the paragraph's apparent purport, and that the finding proper states the court's real and intended conclusion in the matter.

Argued October 2d—decided December 15th, 1917.

ACTION for the alleged conversion of certain acids, raw material and machinery owned by the plaintiff

and used upon premises leased by him for the manu-
facture of picric acid, brought to and tried by the
Superior Court in Hartford County, *Shumway, J.;* facts
found and judgment rendered for the defendant, and
appeal by the plaintiff. *No error.*

On October 15th, 1915, the plaintiff entered into a
contract with Gillespie Bros. & Company to manu-
facture picric acid, it being provided in the contract
that the latter should supply the plaintiff with phenol,
a necessary ingredient, and that the plaintiff should
procure the other ingredients and make the acid. After
the execution of this contract the plaintiff secured a
lease of a plant in Melrose, Connecticut, for use in the
conduct of the business, and entered into a contract
with the Cochrane Chemical Company to supply him
sulphuric and nitric acids, important ingredients used
with phenol in the manufacture of picric, and pur-
chased a large amount of machinery and supplies to
equip the plant which had been leased. The contract
with the Cochrane Chemical Company obligated that
company to furnish a stipulated amount of sulphuric
and nitric acids, to be delivered in installments ap-
proximately as provided, and obligated the plaintiff
to buy and pay for such acids within thirty days from
date of invoices at specified prices.

When the plant was fully equipped, and the plaintiff
was ready to begin to manufacture, Gillespie Bros. &
Company was unable to furnish the phenol as agreed,
and notified the plaintiff that it would be unable to
perform its contract in that respect.

In the preparation and equipment of the plant the
plaintiff had expended $14,562.30, had become obli-
gated to pay the rent specified in the lease of the plant,
and had made the contract with the Cochrane Chemical
Company, as already stated. At the time that Gil-
lespie Bros. & Company advised the plaintiff of its

inability to furnish phenol, a portion of the sulphuric and nitric acids contracted for with the Cochrane Chemical Company had been delivered, and was at the plant unpaid for.

In this condition of affairs the plaintiff, by his letter of January 19th, 1916, made a proposition to Gillespie Bros. & Company, which was thereafter accepted by them, by which he agreed to sell and transfer all his interest in the plant and appurtenances at Melrose, including acids, machinery, and stores thereat, upon their agreement to pay all unpaid bills as shown on list and invoices handed them, and reimburse him for all moneys already expended as shown by receipted bills also handed them. The bill of sale therefor was to be drawn immediately upon the performance by Gillespie Bros. & Company of their undertaking. For the purpose of carrying out the terms of this agreement, the plaintiff caused to be prepared a bill of sale of all his property at Melrose, an assignment of his lease of the premises, and an assignment of his contract with the Cochrane Chemical Company, and offered to execute and deliver the same upon performance on Gillespie Bros. & Company's part. Gillespie Bros. & Company thereupon advised the plaintiff that it was not then ready to make the payment called for, and upon its request completion of the transaction was postponed from time to time. Later, Gillespie Bros. & Company paid to the plaintiff, upon three occasions, the sum of $11,400, leaving a balance due of $6,800.

On or about February 15th, 1916, Gillespie Bros. & Company, together with Steiner & Son, on the one part, and the defendant on the other, entered into a contract wherein the former represented that they were the owners of the plant and property at Melrose. This contract provided for the use by the defendant of the plant for the manufacture of picric acid and the

sale to the defendant of the raw materials there on hand. The defendant agreed to do, without delay, whatever was necessary to properly equip the plant and prepare it for the manufacture of picric acid, and to proceed without delay to manufacture the raw materials on hand into picric.

At about the same time Gillespie Bros. & Company's representative wrote to the plaintiff advising him that the defendant corporation had been organized, and had proposed to take over the Melrose plant, spending about $3,000 or $4,000 in putting it into condition to manufacture picric acid, and to purchase all the sulphuric and nitric acids at the plant. This letter stated that the writer figured that they would thus be enabled to realize the amount owing the plaintiff, and leave a balance in Gillespie Bros. & Company's favor. The writer stated that they had given representatives of the defendant a letter of introduction to the plaintiff, and that it would be two weeks at least before they could start manufacturing operations. These representatives were Messrs. Carpenter and Read, who subsequently called upon the plaintiff in Hartford with the letter of introduction signed by the writer of the aforementioned letter, in which it was stated that they were the representatives of the Lansing Chemical Company, of whom he had written, and confidence expressed that the plaintiff would give them any assistance in his power.

Upon the presentation of this letter the plaintiff, on February 16th, 1916, took Carpenter and Read to the plant at Melrose and turned over to them the keys to it, delivered to them full and complete possession of the property, and recommended for employment the men about the place and stated the compensation they were receiving. At this time Carpenter and Read informed the plaintiff that the defendant had closed a

contract with Gillespie Bros. & Company, representing themselves to be the sole owners of the plant, and that they had come on behalf of the defendant to take possession of it and remodel it for the purpose of manufacturing picric acid, and that they had purchased the property in the plant, including the nitric and sulphuric acids. It was with full knowledge of these statements that the plaintiff delivered the keys and property to the defendant, who continued in the uninterrupted possession of both plant and property and in the manufacture of picric acid at the plant, until the institution of the suit at bar. The delivery to Carpenter and Read by the plaintiff was intended to be one of the personal property contained in the buildings at Melrose, as well as a transfer of possession of the real estate in carrying out the plaintiff's agreement to sell and transfer the same to Gillespie Bros. & Company.

The defendant made no contract, express or implied, with the plaintiff to purchase of the latter, and had no dealings with him looking to such purchase.

One of the objects which Carpenter and Read had in their visit to the plant was to ascertain the amount of sulphuric and nitric acids on hand, for which the Lansing Chemical Company, in its contract with Gillespie Bros. & Company, had obligated itself to make payment. Upon their arrival it was found that the stock of acid was so located that it could not be readily inventoried, and it was agreed that it should be taken out and rearranged under the direction of Carpenter and Read, so that the quantity could be determined. This was subsequently done, and an inventory taken by them showing its cost at the factory of the Cochrane Chemical Company, to have been $4,464.75 and its then value to be $7,243.38. This acid was subsequently, and prior to the beginning of this action, used by the defendant in the operation of the plant.

The defendant in its answer admitted its use of the acid and its obligation to pay for the same, and expressed its willingness to pay therefor to the party entitled to such payment, but alleged that Gillespie Bros. & Company, and Steiner & Son demanded it of them.

*Alvan W. Hyde,* for the appellant (plaintiff).

*William F. Henney,* for the appellee (defendant).

PRENTICE, C. J. The plaintiff seeks recovery in tort for the conversion of personal property alleged to have been owned by him. The court rendered judgment against him upon the ground that at the time the alleged acts of wrongdoing were committed, the ownership of the property was in a third party. From the facts recited in the finding the conclusion necessarily follows that the title to the property and possession thereof had passed out of the plaintiff. There was a contract of sale and purchase of it between the plaintiff and Gillespie Bros. & Company, and a delivery to the defendant as the latter's vendee, made and intended to be made in execution of such contract. Sale of Goods Act, Public Acts of 1907, Chap. 212, § 18. Delivery to the defendant was, under the circumstances detailed in the finding, a delivery to Gillespie Bros. & Company, under the contract. Whether or not, under those circumstances, the title to the property was thereafter in Gillespie Bros. & Company, or in the defendant, is altogether immaterial. It is sufficient that the plaintiff had parted with it. Neither does it matter that the contract of sale by its terms made payment of the purchase price a condition precedent to a consummation of the sale by a delivery of the property. That condition could be waived, and upon the finding was waived.

The plaintiff, however, contends that the finding, in so far as it concerns the fact of delivery and the intent with which the defendant was admitted into possession, should not be accepted at its face value, for the reason that it is inconsistent with one of the paragraphs of the plaintiff's draft-finding marked "Proven," and upon the evidence should be corrected so as to conform to what there appears and in such manner as to negative a delivery to the defendant in performance of the contract of sale made with Gillespie Bros. & Company. An examination of the two findings said to be inconsistent, and apparently not in harmony, makes it reasonably clear that the paragraph of the draft-finding relied upon was marked "Proven," either inadvertently or through a misunderstanding of its apparent purport, and that the finding proper states the court's real conclusion and the one intended by it to be expressed. Closely related paragraphs of the draft-finding endorsed "Not proven," as well as the general tenor of the finding itself and its ultimate conclusion upon which the judgment was founded, leave little doubt upon that point.

That the evidence justified the court in finding as it did in its finding proper, and that, therefore, we are not at liberty to disturb it, there can be no doubt.

A perusal of the record leads to the conclusion that the plaintiff may have a right of action of some sort against somebody; but that he has one against the defendant founded, as this is, upon its tortious wrongdoing in the conversion of the plaintiff's property, is not disclosed.

There is no error.

In this opinion the other judges concurred.